UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BICEK, individually, and on behalf of other members of the general public similarly situated, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act,<br><br>    Plaintiff,<br><br>    v.<br><br>C&S WHOLESALE GROCERS, INC., a Vermont corporation; TRACY LOGISTICS, LLC, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>    Defendants. | No.  2:13-cv-00411-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiff Dennis Bicek ("Plaintiff") seeks relief from Defendants C&S Wholesale Grocers, Inc. ("C&S") and Tracy Logistics, LLC ("Tracy Logistics") (collectively "Defendants") for violations of California state law.  On December 10, 2012, Plaintiff filed a Class Action Complaint in the Superior Court of California, County of Sacramento, on behalf of himself and others similarly situated.

///

///

///

1

Plaintiff alleges violations of: (1) California Labor Code § 1194 for unpaid minimum and overtime wages; (2) the California Labor Code Private Attorneys General Act, Cal. Labor Code §§ 2698-2699.5; and (3) violations of California's unfair competition law, Cal. Bus. & Prof. Code §§ 17200-17207.  On February 28, 2013, Defendants removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Presently before the Court is Plaintiff's Motion to Remand.  (Pl.'s Mot. Remand, Mar. 15, 2013, ECF No. 11.)  Defendants filed a timely opposition.  (Defs.' Opp'n, Apr. 4, 2013, ECF No. 13.)  Then, on May 25, 2013, Defendants filed an Ex Parte Application, seeking to amend or supplement Defendants' Notice of Removal.  (ECF No. 24.)  On June 10, 2013, the Court denied the ex parte application, and ordered Defendants to file the application as a noticed motion for the Court's consideration.  (ECF No. 29.)  Thus, on June 27, 2013, Defendants filed a Motion to Amend/Supplement Notice of Removal.  (ECF No. 33.)  Plaintiff filed an opposition to Defendants' motion.[1]  (ECF No. 35.)

For the reasons set forth below, Defendants' Motion to Amend/Supplement Notice of Removal is GRANTED, and Plaintiff's Motion to Remand is DENIED.[2]

## BACKGROUND[3]

Plaintiff brings the present action on behalf of himself and other current and former warehouse supervisors at Defendant C&S's warehouses in California.

---

[1] Plaintiff filed the opposition one day late and submitted a declaration stating that it was filed late because Plaintiff's attorney instructed the Senior Litigation Assistant to file the opposition on "Thursday, July 12th." (Decl. Jill Parker, July 12, 2013, ECF No. 35.)  However, the opposition was due on Thursday, July 11, 2013.  Due to the incorrect date contained in the instruction, the assistant filed the opposition on Friday, July 12th.  Plaintiff made the same arguments in opposing Defendants' ex parte motion, and thus Defendants had notice of Plaintiff's substantive arguments in opposition to the motion.  Accordingly, the Court accepts Plaintiff's Opposition, although untimely, because the late filing does not prejudice Defendants.

[2] Because oral argument will not be of material assistance, the Court orders these matters submitted on the briefs.  E.D. Cal. Local R. 230(g).

[3] The following recital of facts is taken, sometimes verbatim, from Plaintiff's Class Action Complaint.  (Pl.'s Compl. Attached to Defs.' RJN, ECF No. 1-1.)

Plaintiff's proposed class includes warehouse supervisors who worked for Defendant from February 3, 2007, to final judgment in this case. Defendants employed Plaintiff as a warehouse supervisor, which is an "exempt" salaried position, from approximately November 2007 to December 2011, in Sacramento County. Defendants hired Plaintiff and misclassified him as an "exempt" employee, and paid him on a salary basis, without any compensation for overtime hours worked, missed meal periods or rest breaks. According to Plaintiff, Defendants engaged in a uniform policy and systematic scheme of wage abuse against their warehouse supervisors. This alleged scheme involved misclassifying warehouse supervisors as "exempt" for purposes of payment of overtime compensation, when in fact these employees were "non-exempt" under California law.

Plaintiff and other class members worked over eight hours per day and/or more than forty hours per week during the course of their employment with Defendants. Furthermore, although Defendants knew or should have known that Plaintiff and putative class members were entitled to receive certain wages as overtime compensation, Plaintiff and putative class members did not receive such wages. Similarly, Plaintiff and putative class members did not receive all rest and meal periods that they were entitled to receive, nor did Plaintiff and the putative class members receive one additional hour of pay when a meal period was missed. Plaintiff also alleges that while Defendants knew or should have known that Plaintiff and putative class members were entitled to receive at least minimum wages as compensation, Plaintiff and putative class members did not receive at least minimum wages for all hours worked.

Plaintiff and putative class members also allege that they were entitled to timely payment of all wages during their employment and to timely payment of wages earned upon termination, but did not receive timely payment of these wages either during their employment or upon termination. Plaintiff and putative class members likewise did not receive complete and accurate wage statements from Defendants, although Defendants knew or should have known that Plaintiff and putative class members were entitled to these statements.

3

Defendants also failed to keep complete and accurate payroll records. Finally, Defendants falsely represented to Plaintiff and putative class members that the wage denials were proper. Instead, these wage denials were improper and served the purpose of increasing Defendants' profits.

These claims were brought by a different plaintiff in a prior class action, Tompkins v. C&S Wholesale Grocers, Inc., which was initially brought in state court on February 3, 2011.[4] On March 14, 2011, the defendants in the Tompkins action removed the case to federal court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The defendants did not assert CAFA jurisdiction in the Tompkins case. The plaintiff then moved to remand the case on the grounds that the operative complaint alleged an amount in controversy below the $75,000 threshold. The Court granted the plaintiff's motion to remand, finding that there was insufficient evidence to show that the amount in controversy for the plaintiff's individual claims exceeded $75,000. The defendants again removed the case to federal court on October 26, 2011, based on discovery conducted prior to that date. The Tompkins plaintiff again moved to remand, and the Court again granted the plaintiff's motion on the grounds that the defendants had not met their burden of proving that the amount in controversy on the plaintiff's individual claims exceeded $75,000.

On June 15, 2012, after the case was remanded, the Tompkins defendants deposed the named plaintiff in that case, David Tompkins. On September 21, 2012, the defendants offered Mr. Tompkins a Joint Offer to Compromise under California Civil Procedure Code § 998(b)(2), in the amount of $75,001. Mr. Tompkins accepted the Joint Offer on October 3, 2012. The instant action was filed two months later, on behalf of the same putative class.

///

///

---

[4] All facts relating to the Tompkins action are taken from Defendants' Opposition to Plaintiff's Motion to Remand. (ECF No. 14.)

# LEGAL BACKGROUND[5]

In September 2003, the California Legislature enacted the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Cal. Lab. Code §§ 2698-2699.5. The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws. Staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market. Therefore, it was in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for violations of the Labor Code, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts.

Pursuant to PAGA, an "aggrieved employee" may bring a civil action personally and on behalf of other current, or former, employees to recover civil penalties for violations of the California Labor Code. Cal. Lab. Code § 2699(a). PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Id. § 2699(c). Seventy-five percent of the civil penalties recovered go to the Labor and Workforce Development Agency, leaving the remaining twenty-five percent for the "aggrieved employees." Id. § 2699(i).

# STANDARDS

A.     **Supplement Notice of Removal**

28 U.S.C. § 1446 allows a defendant to remove an action to federal court within thirty days from the date of receipt of a copy of the initial pleading.

---

[5] The following summary of the Private Attorneys General Act of 2004 is taken from Arias v. Sup. Ct., 46 Cal. 4th 969, 980-81 (2009).

It is well settled that the defendant's notice of removal may be amended freely prior to the expiration of this initial thirty-day period. Smiley v. Citibank (S. Dakota), N.A., 863 F. Supp. 1156, 1158 (C.D. Cal. 1993) (citing Richardson v. United Steelworkers of Am., 864 F.2d 1162, 1159 (5th Cir. 1989), cert. denied, 495 U.S. 946 (1990)). "After the first thirty days, however, the cases indicate that the petition may be amended only to set out more specifically grounds for removal that already have been stated, albeit imperfectly, in the original petition; new grounds may not be added and missing allegations may not be furnished." Id. at 1159 (citing 14A C. Wright, A. Miller, E. Cooper, Federal Practice & Procedure § 3733 (2d ed. 1985)). "The majority of courts, for example, allow defendants to amend 'defective allegations of jurisdiction' in their notice as long as the initial notice of removal was timely filed and sets forth the same legal grounds for removal." Id. (citing Barrow Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969) (permitting amendment of removal petition to cure inadequate allegation of the citizenship of the defendant corporation)). "If the removing party seeks to cure a defect in the removal petition after the thirty day period has elapsed . . . the court has discretion to prohibit such an amendment." Hemphill v. Transfresh Corp., No. C–98–0899–VRW, 1998 WL 320840, at *4 (N.D. Cal. June 11, 1998).

### B.     Subject Matter Jurisdiction

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331. A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id. § 1332(a)(1)-(2).

///

Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff being a citizen of a different state from each defendant. 28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of citizenship is required).

When a party brings a case in state court in "which the district courts of the United States have original jurisdiction," the defendant may remove it to the federal court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)). A motion to remand is the proper procedure for challenging removal. "The party invoking the removal statute bears the burden of establishing federal jurisdiction." Ethridge, 861 F.2d at 1393 (internal citations omitted). Courts "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). "[I]f there is any doubt as to the right of removal in the first instance," the court must grant the motion for remand. Id. Additionally, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

## ANALYSIS

### A.  Supplement Notice of Removal

Defendants seek to amend or supplement their Notice of Removal to include new allegations and evidentiary support recently obtained through Defendants' deposition of Plaintiff Dennis Bicek. Plaintiff's deposition was taken on May 13 and 14, 2013, after the Court submitted Plaintiff's Motion to Remand on the briefs.

///

1  Defendants contend that Plaintiff's deposition testimony establishes that the amount in
2  controversy is met, and the Notice of Removal should be amended or supplemented to
3  include this additional summary judgment-type evidence.
4        As set forth above, "[t]he majority of courts . . . allow defendants to amend
5  'defective allegations of jurisdiction' in their notice as long as the initial notice of removal
6  was timely filed and sets forth the same legal grounds for removal."  Smiley,
7  863 F. Supp. at 1159 (citing Barrow, 418 F.2d at 318 (permitting amendment of removal
8  petition to cure inadequate allegation of the citizenship of the defendant corporation)).
9  However, when defendants attempt to assert totally new grounds for removal or "to
10 create jurisdiction where none existed," courts uniformly deny leave to amend.  Rockwell
11 Int'l Credit Corp. v. U.S. Aircraft Ins. Grp., 823 F.2d 302, 304 (9th Cir. 1987), overruled
12 on another ground by Partington v. Gedan, 923 F.2d 686 (9th Cir. 1991).  Indeed, courts
13 frequently repeat the Ninth Circuit's language from Barrow that "the removal petition
14 cannot be . . . amended to add allegations of substance but solely to clarify 'defective'
15 allegations of jurisdiction previously made."  418 F.2d at 317; see also Emeryville Redev.
16 Agency v. Clear Channel Outdoor, No. C 06-01279 WHA, 2006 WL 1390561, at *3 (N.D.
17 Cal. May 22, 2006) (discussing "allegations of substance" rule); Hemphill, 1998 WL
18 320840 at *4 (citing Barrow, 418 F.2d at 317); Nat'l Audobon Soc. v. Dep't of Water &
19 Power of City of L.A., 496 F. Supp. 499, 503 (E.D. Cal. 1980) (same).  In Barrow, the
20 defendant's removal notice alleged "simply that plaintiff was a citizen of Alaska and
21 defendant of New York," rather than "disclos[ing] both the state of incorporation and the
22 location of the corporation's principal place of business."  418 F.2d at 318.  The Ninth
23 Circuit followed other circuit courts in holding that these "allegations [were] defective in
24 form but not so lacking in substance as to prevent their amendment."  Id. (citing
25 Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299 (10th Cir. 1968)).
26 ///
27 ///
28 ///

Furthermore, when a defendant must show that the amount in controversy exceeds the statutory amount, the defendant "may rely upon affidavits and declarations to make that showing; the law in the Ninth Circuit expressly contemplates the district court's consideration of some evidentiary record." Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010); see also Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004) (court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal"). While "[i]t is best to make this showing in the notice of removal itself, . . . a party can supplement its showing in an opposition to a motion to remand." Waller v. Hewlett-Packard Co., 11CV0454-LAB RBB, 2011 WL 8601207, at *2 (S.D. Cal. May 10, 2011) (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002)).

In Cohn v. Petsmart, the Ninth Circuit noted that "Petsmart's notice of removal was deficient because it only summarily alleged that the amount in controversy exceeded $75,000, without alleging any underlying facts to support this assertion." 281 F.3d at 843 (citing Gaus, 980 F.2d at 567). However, Petsmart's opposition to the plaintiff's motion to remand provided further factual basis for the amount in controversy alleged in the notice of removal, explaining that the $75,000 amount was based on the plaintiff's settlement demand. The Ninth Circuit found that "the district court did not err in construing Petsmart's opposition as an amendment to its notice of removal." Id. (citing Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969) ("It is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"); 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.")).

Subsequently, the Ninth Circuit stated that Cohn distinguished Gaus and stands for the proposition "that a district court may consider later-provided evidence as amending a defendant's notice of removal."

///

///

Gen. Dentistry For Kids, LLC v. Kool Smiles, P.C., 379 F. App'x 634, 636 (9th Cir. 2010); see also Morella v. Safeco Ins. Co. of Ill., 2:12-CV-00672 RSL, 2012 WL 2903084, at *1 (W.D. Wash. July 16, 2012) (citing Cohn, 281 F.3d 837) ("[T]he post-removal submission of supporting evidence can be treated as amending the notice of removal.").

Here, Defendants have not changed their grounds for removal from those originally asserted in the notice of removal—Defendants originally asserted CAFA and diversity jurisdiction and still assert only those grounds. Cf. Rockwell Int'l Credit Corp., 823 F.2d at 304. Defendants merely seek to supplement their original Notice of Removal with facts that support these bases for jurisdiction. Furthermore, Defendants' Notice of Removal is not so lacking in substance that it could not be amended or supplemented with the information contained in Plaintiff's deposition. While it is true that Defendants seek to amend their notice of removal not through evidence submitted in opposition to a motion to remand, but through a separate noticed motion, the Court will not "exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." See Piazza v. EMPI, Inc., 1:07-CV-00954-OWW-GSA, 2008 WL 590494, at *8 (E.D. Cal. Feb. 29, 2008) (quoting Barrow, 418 F.2d at 318). Accordingly, Defendants' Motion to Amend/Supplement Notice of Removal is GRANTED, and Defendants' Notice of Removal (ECF No. 1) is amended to include the portions of Plaintiff Dennis Bicek's deposition testimony, as submitted by Defendants (ECF No. 33-2).

**B.    Subject Matter Jurisdiction**

The Class Action Fairness Act of 2005 ("CAFA") gives federal district courts original jurisdiction in any civil action where: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action is pled as a class action involving more than 100 putative class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant."

10

28 U.S.C. § 1332(d).  CAFA also provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." Id. § 1332(d)(6).  Because CAFA allows for federal jurisdiction where only minimal, rather than complete, diversity exists, "[§] 1332(d) thus abandons the complete diversity rule of covered class actions." Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 680 (9th Cir. 2006).  The Ninth Circuit has explained that CAFA did not disturb the traditional allocation of the burden of establishing removal jurisdiction, holding "that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Id. at 685.

The Jurisdiction and Venue allegations of Plaintiff's Complaint state: "The amount in controversy for the class representative, including claims for compensatory damages, interest, and pro rata share of attorneys' fees, is less than $75,000." (ECF No. 1-1 at 5.) The Jurisdiction and Venue allegations also state that "[t]he total amount in controversy as a result of this lawsuit inclusive of attorneys' fees is less than $5,000,000." (Id.) Plaintiff's Prayer for Relief again states:

> For each cause of action, the total amount of damages, penalties, interest, and pro rata share of attorneys [sic] fees including monetary value of 'further relief as the Court may deem equitable and proper' for the class representative is less than $75,000, and the total amount of damages, penalties, interest, attorneys [sic] fees and any monetary value of 'further relief as the Court may deem equitable and proper' from this action is less than $5,000,000.

(ECF No. 1-1 at 27.)

### 1. Defendants' Burden

Plaintiff contends that the Court lacks CAFA jurisdiction because Plaintiff has pled an amount in controversy less than CAFA's $5 million threshold for jurisdiction, and Defendant has failed to prove with legal certainty that CAFA's jurisdictional amount is met.

11

Lowdermilk v. United States Bank National Association provides that "where the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdiction amount is met." 479 F.3d 994, 1000 (9th Cir. 2007). The plaintiff must plead the amount in "good faith" for the legal certainty standard to apply. Id. However, "[w]here the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." Abrego Abrego, 443 F.3d at 683. That is, a preponderance of the evidence is the appropriate standard "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007).

Defendants counter that the preponderance-of-the-evidence standard applies. Defendants rely on the Supreme Court's recent decision in Standard Fire Insurance Company v. Knowles, 133 S. Ct. 1345 (U.S. Mar. 19, 2013), to support their argument that they cannot be required to show that the jurisdiction amount of $5 million is met to a legal certainty. Defendants contend that after Knowles, Lowdermilk is no longer good law. However, the Court must "follow Lowdermilk unless Knowles undercuts the theory or reasoning of Lowdermilk 'in such a way that the cases are clearly irreconcilable.'" Deaver v. BBVA Compass Consulting & Benefits, Inc., No. 12-cv-222 JSC, 2013 WL 2156280, at *5 (N.D. Cal. May 17, 2013) (quoting Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003)).

In Knowles, the Court addressed the question of whether "a class-action plaintiff who stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total." 133 S. Ct. 1347. The Court found that such a stipulation does not "remove the case from CAFA's scope[.]" Id. Specifically, the Court held that because a "precertification stipulation does not bind anyone but [the named Plaintiff], [Plaintiff] has not reduced the value of the putative class members' claims." Id. at 1349.

1  Thus, such a stipulation does not operate to avoid federal jurisdiction under CAFA.
2  Moreover, Knowles concerned the situation where the amount in controversy would
3  "exceed[ ] $5 million but for the stipulation of the putative class representative." Id. at
4  1348 (emphasis in original). On the basis of the defendant's evidence, "the District Court
5  [in Knowles] found that the 'sum or value' of the 'amount in controversy' would, in the
6  absence of the stipulation, have fallen just above the $5 million threshold." Id. Thus,
7  Knowles addresses the narrow situation in which: 1) removal pursuant to CAFA would
8  have been proper but for the named plaintiff's stipulation to an amount below the
9  $5 million threshold; and 2) the named plaintiff's stipulation could not validly bind the
10  as-yet absent class members.
11      By contrast, Lowdermilk did not involve a stipulation. Lowdermilk concerned the
12  burden of proof to be applied to a trial court's determination of whether the claims pled
13  exceed the $5 million threshold. Lowdermilk relied, in part, on the rule that the putative
14  class representative is the "master of her complaint" and thus "may sue for less than the
15  amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in
16  state court." 479 F.3d at 999. Rather than contradict this reasoning, the Court in
17  Knowles expressly affirms that the Plaintiff is the master of her complaint, and as such
18  may avoid removal to federal court. Id. ("[F]ederal courts permit individual plaintiffs, who
19  are the masters of their complaints, to avoid removal to federal court, and to obtain a
20  remand to state court, by stipulating to amounts at issue that fall below the federal
21  jurisdictional requirement.") Knowles simply does not address the situation at issue in
22  Lowdermilk, in which a putative class plaintiff, as master of his complaint, merely
23  alleges—rather than stipulates to—an amount in controversy below the $5 million
24  threshold.
25      In sum, Knowles does not forbid a plaintiff from intentionally alleging that the
26  claims brought are under the $5 million threshold to avoid federal jurisdiction. Thus,
27  Knowles is not "clearly irreconcilable" with Lowdermilk, and this Court is therefore bound
28  by Lowdermilk.

13

See <u>Deaver</u>, 2013 WL 2156280 at *5 (finding that <u>Lowdermilk</u> is good law after <u>Knowles</u>); <u>Bell v. Home Depot U.S.A., Inc.</u>, No. 12-cv-2499, 2013 WL 1791920, at *4 n.1 (E.D. Cal. Apr. 26, 2013) (noting that the narrow issue decided in <u>Knowles</u> does not affect the legal certainty analysis).  Because Plaintiff has specifically alleged that the total amount in controversy is less than $5 million (<u>see</u> <u>supra</u> (quoting ECF No. 1-1 at 5, 27)), Defendants have the burden of establishing the amount in controversy to a legal certainty.  See <u>Lowdermilk</u>, 479 F.3d at 999.

### 2. Amount in Controversy Calculations

Plaintiff's first cause of action alleges that class members "were not paid overtime compensation for the hours they worked in excess of eight (8) hours in a day and/or forty (40) hours in a week." (ECF No. 1-1 at 17.)  Defendants assert that the amount in controversy for Plaintiff's overtime claims is $5,522.148.72.  (ECF No. 33-1 at 16.) Defendants reach that figure by calculating that there were "more than 8,481 workweeks worked by the 101 putative class members during the putative class period" and assuming that "Plaintiff and the putative class members worked more than 10 hours of overtime per week."  Defendants then multiplied the number of workweeks in question (8,481) by the average hourly rate of pay for warehouse supervisors during the claims period ($27.13) by the amount of overtime worked per work week (16 hours) by wages at a rate of time and a half owed for overtime (1.5), to arrive at $5,522,148.72 as the amount in controversy for this claim.  (ECF No. 33-1 at 15-16.)

Defendants rely on Plaintiff's deposition testimony, in which he testified that in 2007, he worked "twelve to thirteen hours a day," and in 2008, he worked "probably . . . fourteen hours a day." (ECF No. 33-2 at 12, 10.)  Plaintiff estimated that in 2009 he worked "the same amount of hours [as in 2008], twelve to fourteen hours a day," and testified that the amount increased to "up to fifteen to eighteen hours a day" in 2010 and 2011.

14

(Id. at 11.)  Each of these shifts, from 2007 to 2011, was four days per week.  (ECF No. 33-2 at 10.)

Plaintiff also testified that the other supervisors on his shift worked the same hours as Plaintiff when he worked twelve to thirteen hours per day in 2007, fourteen hours per day in 2008, twelve to fourteen hours per day in 2009, and when he worked fifteen to eighteen hours per day in 2010 and 2011.  (ECF No. 33-2 at 11-12.)  However, Plaintiff testified that he didn't know what hours supervisors on other shifts worked in 2007.  (Id. at 11-12.)  When asked if he knew whether other supervisors were working eleven, twelve, thirteen, or fourteen hours in 2008, Plaintiff answered "I couldn't answer for them.  I don't know what their start time was."  (Id. at 13.)  But when asked whether "other supervisors on different shifts [were] working the same hours" that Plaintiff worked in 2009, Plaintiff responded, "I would say yeah, pretty close to the same amount of hours that we were working.  Because we couldn't start working until their shift or their product was off the dock.  So if they were running into our start time, then I know that they were ten-plus hours."  (Id.)  Plaintiff also testified that in 2010, the other supervisors on different shifts were working approximately the same number of hours that Plaintiff was—between fifteen and eighteen hours per day.  (Id.)  Finally, Plaintiff testified that in 2011, the other supervisors on different shifts "were working fourteen, fifteen, sixteen, up to eighteen hours a day."  (Id.)

The legal certainty standard does not require an individualized damages analysis with respect to each class member.  All that the legal certainty standard requires is the production of "concrete evidence" from which a court can estimate the amount in controversy.  See Lowdermilk, 479 F.3d at 1001 (discussing defendant's failure to provide concrete evidence which would permit the court to "estimate with any certainty the actual amount in controversy.")

In this case, Defendants provide concrete evidence that allows the Court to estimate with some certainty the actual amount in controversy.  See Lowdermilk, 479 F.3d at 1001.

Although there is no evidence as to the hours worked by employees at other facilities where Plaintiff did not work, Plaintiff's deposition testimony provides concrete evidence as to the hours worked by the other supervisors on his shifts for the years 2007 through 2011. Furthermore, although Plaintiff's testimony does not provide evidence about the hours worked by supervisors on different shifts for the years 2007 and 2008, Plaintiff's testimony states that in the years 2009 through 2011, supervisors on other shifts worked hours similar to those that Plaintiff worked—i.e., sometimes "fourteen, fifteen, sixteen, up to eighteen hours a day." (See ECF No. 33-2 at 12-13.) Defendants also provide the declaration of Christopher Clark, a Regional Director of Field Human Resources for Defendant C&S. (ECF No. 33-2 at 24.) Clark states that he is assigned to the West Coast region, which includes Tracy Logistics LLC, Sacramento Logistics LLC, and Fresno Logistics LLC (the California subsidiaries of C&S). (Id.) Clark's declaration states that from February 3, 2007, to February 1, 2013, Tracy Logistics LLC, Sacramento Logistics LLC, and Fresno Logistics LLC employed at least 101 individuals, in the salaried position of warehouse supervisor at the California facilities. (Id.) During this time, the warehouse supervisors at the California facilities worked a total of "at least 8,481 workweeks." (Id. at 24.) Clark further states that during the period of February 3, 2007, to February 1, 2013, the average salary of warehouse supervisors was approximately $56,432.98 per year, with an hourly rate of approximately $27.13 per hour. (Id. at 25.)

     Thus, the concrete evidence from Plaintiff's deposition testimony—and specifically Plaintiff's testimony concerning the hours worked by him and other supervisors on his shift—allows the Court to estimate that each class member worked, at a minimum, twelve hours per day. (See ECF No. 33-2 at 11-13 (testifying that Plaintiff and supervisors on his shift worked twelve to thirteen hours per day in 2007, fourteen hours per day in 2008, twelve to fourteen hours per day in 2009, and fifteen to eighteen hours per day in 2010 and 2011).)

///

Combined with the concrete evidence from Clark's declaration, the Court makes the following calculations: (8,481 workweeks in the alleged claims period) x (4 hours overtime per day when estimating that class members worked at least 12 hours per day) x (4 days per workweek) x ($27.13 average hourly rate of pay for warehouse supervisors) x (1.5 overtime rate) = $5,522.148.72 in controversy for unpaid overtime for all putative class members.

Accordingly, Defendants have shown to a legal certainty that CAFA's requisite amount in controversy ($5,000,000) is met by Plaintiff's claim for unpaid overtime alone.

### 3.     Diversity of Citizenship

CAFA's third requirement is that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d). A corporation's citizenship is determined by the corporation's principal place of business and place of incorporation. 28 U.S.C. § 1332(c)(1); Tosco Corp. v. Communities For a Better Env., 236 F.3d 495, 499 (9th Cir. 2001). Defendant C&S alleges that it is incorporated in Vermont with its principal place of business in New Hampshire. Thus, Defendant C&S is a citizen of both Vermont and New Hamphsire.

Defendant Tracy Logistics alleges that it is a citizen of Delaware, where it is incorporated, and New Hampshire, where it has its principal place of business. However, Tracy Logistics is a limited liability corporation ("LLC"). According to the Ninth Circuit, "LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction." Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). "This treatment accords with the Supreme Court's consistent refusal to extend the corporate citizenship rule to non-corporate entities, including those that share some of the characteristics of corporations."

///

Id. (citing Carden v. Arkoma Assocs., 494 U.S. 185, 189 (1990) (treating a limited partnership as having the citizenship of all its members); Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 456-57 (1900) (refusing to extend the corporate citizenship rule to a "limited partnership association" although it possessed "some of the characteristics of a corporation")). "This treatment is also consistent with the common law presumption that unincorporated associations are not legal entities independent of their members." Id. (citing Strotek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1133 n.2 (9th Cir. 2002)). Thus, "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens." Id. Defendant Tracy Logistics includes absolutely no allegations regarding the citizenship of its owners or members.[6] Thus, the Court is unable to determine whether Defendant Tracy Logistics is diverse from Plaintiff.

Accordingly, only the citizenship of one Defendant can be determined from Defendants' allegations. However, unlike diversity jurisdiction, CAFA requires only that one defendant be diverse from one member of the class of plaintiffs. 28 U.S.C. § 1332(d). Thus, although the Court cannot determine Defendant Tracy Logistics' citizenship, the allegations contained in the Notice of Removal make clear that Defendant C&S, as a citizen of New Hampshire and Vermont, is diverse from Plaintiff, who is a citizen of California. Accordingly, CAFA's diversity of citizenship requirement is satisfied.

Because Defendants have shown that CAFA's amount in controversy has been met to a legal certainty, and because CAFA's minimal diversity of citizenship requirement is met, the Court finds it appropriate to exercise subject matter jurisdiction over this case pursuant to the Class Action Fairness Act.[7] Plaintiff's Motion to Remand is therefore DENIED.

---

[6] Although Plaintiffs argue that Defendants fail to produce any evidence of their citizenship, (ECF No. 11 at 12), "at this stage of the case, . . . [D]efendants [are] merely required to allege (not to prove) diversity," Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).

[7] Given that the Court finds that CAFA jurisdiction exists, the Court declines to assess whether it may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Amend/Supplement Notice of Removal is GRANTED (ECF No. 33) and Plaintiff's Motion to Remand is DENIED (ECF No. 11).

IT IS SO ORDERED.

Dated: August 2, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT