1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DENNIS BICEK,                          No.  2:13-cv-0411-MCE-KJN

12              Plaintiff,

13        v.                                ORDER

14   C&S WHOLESALE GROCERS, INC. &
     TRACY LOGISTICS LLC,
15
16              Defendants.

17   INTRODUCTION

18        On October 1, 2013, the court conducted a telephonic conference with respect to the

19   parties' discovery dispute concerning the depositions of putative class members by defendants.

20   (ECF No. 52.)  The parties had encountered significant difficulties with the scheduling of these

21   depositions, as outlined below.  At the time of the telephonic conference, the parties had agreed

22   on specific dates for the depositions, but plaintiff nonetheless objected to the depositions going

23   forward on other grounds.  (ECF No. 51.)

24        After considering the parties' joint letter brief filed September 30, 2013 (ECF No. 51), and

25   for the reasons discussed with counsel at the conference, the court ordered the depositions of

26   putative class members to go forward on the specified, agreed-upon dates.  (ECF No. 53.)

27   Additionally, the court permitted defendants to file a properly supported request for sanctions in

28   the form of attorneys' fees and costs no later than 5 p.m. on Friday October 4, 2013.  (Id.)

                                           1

1    Plaintiff was allowed to file a response to defendants' request for sanctions no later than 5 p.m. on

2    Tuesday October 8, 2013.  (Id.)  Plaintiff's counsel was further ordered to show cause, no later

3    than 5 p.m. on Tuesday October 8, 2013, why the court should not sua sponte impose monetary

4    sanctions based on plaintiff's counsel's conduct with respect to scheduling the depositions, and its

5    improper objections as to availability of the prospective deponents.  (Id.)

6         On October 4, 2013, defendants filed a timely request for sanctions, and on October 8,

7    2013, plaintiff filed a timely response to defendants' request for sanctions and the court's order to

8    show cause.  (ECF Nos. 54, 55.)  Upon consideration of the parties' filings, the discussions at the

9    October 1, 2013 telephonic conference, and the applicable law, the court grants defendants'

10   request for sanctions in part, declines to sua sponte impose any additional sanctions, and

11   discharges the order to show cause.

12   BACKGROUND

13        In this putative class action, plaintiff alleges that he and a putative class of current and

14   former salaried warehouse supervisors working for defendants were misclassified as exempt

15   employees.  Based on the alleged misclassification, plaintiff claims that he and the putative class

16   members were not provided with overtime pay, meal periods, and rest periods.  The putative class

17   includes approximately 110 current and former warehouse supervisors who worked exclusively in

18   California.  Plaintiff commenced the action on December 10, 2012 in the Sacramento County

19   Superior Court, and the action was removed by defendants to this court on February 28, 2013.

20   (ECF No. 1.)

21        During the parties' Rule 26 conference, it was agreed that each party could take 15

22   depositions of putative class members.  (Declaration of Julie Yap, ECF No. 54-2 ["Yap Decl."] ¶

23   2.)  This agreement was memorialized in the parties' joint status report filed with the court on

24   April 29, 2013.  (ECF No. 23 at 5-6.)

25        On June 25, 2013, defendants' counsel Ms. Yap inquired via e-mail whether plaintiff's

26   counsel would be available for depositions of putative class members between August 14 and

27   ////

28   ////

2

August 23.  (Yap Decl. ¶ 3, Ex. B.)[1]  That same day, plaintiff's counsel Mr. Aiwazian simply

responded "No."  (Id. ¶ 4, Ex. C.)  Defendants' counsel thanked plaintiff's counsel for the

prompt response, and asked whether plaintiff's counsel was available for any specific dates/weeks

in September.  (Id. ¶ 5, Ex. D.)  Plaintiffs' counsel then replied that "[w]e are generally available

during the last 2 weeks of September."  (Id. ¶ 6, Ex. E.)

The following week, on July 2, 2013, defendants' counsel sent another e-mail to

plaintiff's counsel, confirming plaintiff's counsel's availability for the last two weeks of

September, and inquiring whether any of the other attorneys representing plaintiff (other than Mr.

Aiwazian) may be available for putative class member depositions between August 14 and

August 23 or the first couple of weeks of September.  Defendants' counsel reasoned that, due to

the number of depositions involved and potential scheduling conflicts that could arise, defendants

wished to explore additional potential deposition dates.  Defendants' counsel noted that at least

some of plaintiff's attorneys may be available, given that there were two separate law firms and at

least five different attorneys representing the named plaintiff.[2]  (Yap Decl. ¶ 7, Ex. F.)

Defendants' counsel received no response to that e-mail.  (Id.)

On July 3, 2013, plaintiff's counsel Mr. Aiwazian sent defendants' counsel an e-mail

regarding a different discovery matter.  As part of defendants' counsel's response to that e-mail,

defendants' counsel again inquired regarding further deposition dates, but received no response.

(Yap Decl. ¶ 8, Ex. G.)  Subsequently, in response to a July 9, 2013 e-mail from plaintiff's

counsel Jill Parker regarding a different discovery matter, defendants' counsel Andrew McNaught

[1] Although a time-intensive task, the court finds it necessary to summarize the parties' correspondence in some detail in order to adequately portray the meet-and-confer efforts, or lack thereof, with respect to the discovery at issue. In summarizing these communications, the court refers to the e-mails and other writings referenced in the declaration of defendants' counsel Julie Yap, along with its accompanying exhibits.  The declaration of plaintiff's counsel Edwin Aiwazian does not attach any additional correspondence, nor does it represent that defendants failed to provide the court with all the pertinent communications and correspondence.  Indeed, plaintiff's own filing largely references Ms. Yap's exhibits.

[2] According to plaintiff's response to defendants' request for sanctions and the order to show cause, plaintiff is represented by R. Rex Parris, Alexander Wheeler, and Kitty Szeto of the R. Rex Parris Law Firm, and by Edwin Aiwazian, Jill Parker, and Jonathan Lebe of Lawyers for Justice, PC.  (ECF No. 55.)

1    also mentioned defendants' earlier request for additional deposition dates.  (Id. ¶ 9, Ex. H.)  Ms.

2    Parker did not respond to that e-mail.  (Id.)

3            At a July 19, 2013 telephonic conference concerning other discovery matters, plaintiff's

4    counsel Ms. Parker represented that she had not received defendants' counsel's e-mails related to

5    the deposition scheduling and promised to look into potential dates.  (Yap Decl. ¶ 10.)  That same

6    day after the telephonic conference, defendants' counsel forwarded the prior e-mail

7    correspondence regarding the depositions to Ms. Parker and other counsel for plaintiff, and

8    requested further potential dates in addition to the last two weeks of September.  (Id. ¶ 11, Ex. I.)

9            On July 20, 2013, plaintiff's counsel Mr. Aiwazian responded: "We would be delighted to

10   cooperate with you.  Please provide us with the names of the folks you seek to depose along with

11   their personnel files and we will provide you with our dates of availability.  We will agree to treat

12   the records according to the terms of the protective order."  (Yap Decl. ¶ 12, Ex. J.)[3]  Defendants'

13   counsel replied on July 22, 2013, stating:

14               Thank you for your willingness to cooperate with us regarding
             finding available deposition dates.  However, despite numerous
15           requests and the passage of almost a month from our initial request,
             your email still failed to provide available dates (aside from the last
16           two weeks of September that you previously indicated were
             available for these depositions).  The identification of potential
17           deponents and the furnishing of their personnel files is not a
             prerequisite to our narrow request that you provide additional
18           available dates for depositions in August and September 2013.
             Please let us know your availability as soon as possible.
19

20   (Id. ¶ 13, Ex. K.)  That same day, plaintiff's counsel wrote back: "We need the personal [sic] files

21   of any current or former employees before any of their depositions.  We are generally available

22   for depositions now in mid to late September.  Please go ahead and set them as you wish and we

23   will exercise best efforts to be available."  (Id. ¶ 14, Ex. L.)

24           Thereafter, on July 30, 2013, defendants' counsel confirmed plaintiff's counsel's

25   availability for depositions on all weekdays in mid-to-late September, and reiterated defendants'

26   _____

27   [3] Significantly, plaintiff's counsel does not presently represent these putative class members, and
     at the hearing represented that they had not yet spoken to any of them.  Accordingly, plaintiff's
     counsel's insistence on receiving the personnel files before the depositions does not appear to be
28   legally supported.

4

1   request to schedule depositions in August or early September in order to complete all putative

2   class member depositions by the end of September.  (Yap Decl. ¶ 15, Ex. M.)  Later that day,

3   plaintiffs' counsel responded: "Again, we will object to any deposition of a putative class member

4   going forward until we have their respective personnel files.  When can you provide us the files?"

5   (Id. ¶ 16, Ex. N.)  Subsequently, on August 12, 2013, defendants' counsel wrote: "With respect to

6   personnel files, Defendants are willing to provide appropriate documents, subject to reasonable

7   measures to address the privacy concerns of the non-party deponents.  Our understanding is that

8   Plaintiff's counsel is available for depositions on September 16, 17, 18, 19, 20, 23, 24, 25, 26, 27,

9   and 30.  We will be noticing depositions within this period."  (Id. ¶ 17, Ex. O.)  That same day,

10   plaintiff's counsel Mr. Aiwazian responded: "Again, we ask that you agree to provide the

11   personnel files.  What do you by appropriate documents? [sic]  Also, many if not all of these

12   individuals have filed their own individual lawsuits.[4]  You can't get two bites at the apply. [sic]

13   You should decide which case you are going to depose them [sic] and let us know.  No, I'm no

14   longer available on all of these dates."  (Id. ¶ 18, Ex. P.)  Mr. Aiwazian did not indicate for which

15   dates he was no longer available, nor did he indicate whether other attorneys for plaintiff were

16   available for the dates for which Mr. Aiwazian was no longer available.  (Id.)

17        On August 21, 2013, defendants served on plaintiff's counsel, via overnight mail,

18   deposition notices and copies of deposition subpoenas served on the deponents.  The depositions

19   were noticed for September 17-18, and 24-26.  (Yap Decl. ¶ 19.)  On August 23, 2013,

20   defendants' counsel sent an e-mail to plaintiff's counsel confirming service of the deposition

21   notices and copies of the deposition subpoenas, the names of the deponents, and the dates of the

22   depositions.  Defendants' counsel requested plaintiff's counsel to confirm their availability for the

23   noticed dates, and also stated:

24            You have previously requested personnel files for the deponents.  In
              order to comply with the terms of the stipulated protective order,
25            Defendants must give the deponents written notice that it will

26   _____

27   [4] Defendants' counsel Ms. Yap represents that, to her knowledge, none of the proposed deponents
     have filed their own individual lawsuits.  (Yap Decl. ¶ 18.)  Because the discrepancy is not
     material to defendants' request for sanctions, the court need not resolve that potential factual
28   dispute.

5

produce these materials along with a copy of the stipulated protective order.  Attached is a copy of our proposed notice to the deponents.  Please let us know by Friday August 23, 2013 whether you have any objections to the proposed notice.  We intend to deliver this notice to the deponents on Monday, August 26.  If we receive no objections from the class members, we will produce the personnel files to you, pursuant to the protective order, prior to the depositions.

(Id. ¶ 20, Ex. Q.)  Defendants' counsel did not receive a response from plaintiff's counsel that same day as requested, but acknowledging the short turnaround time requested, defendants' counsel decided to wait a while longer to allow plaintiff's counsel additional time to voice any objections.  (Id.)  On August 27, 2013, defendants' counsel again requested plaintiff's counsel to confirm their availability for the depositions.  (Id. ¶ 21, Ex. R.)  Later that day, plaintiff's counsel responded to defendants' counsel's previous August 23, 2013 e-mail: "we have no objection to the notice as long as it contains our names and contact information."  (Id. ¶ 22, Ex. S.)  The e-mail did not address plaintiff's counsel's availability for the depositions.  (Id.)

Subsequently, on August 29, 2013, defendants' counsel sent out, along with copies of the stipulated protective order, the agreed-upon notices to the deponents regarding disclosure of their personnel files to plaintiff's counsel, which required the deponents to submit any objections by mail no later than September 6, 2013.  (Yap Decl. ¶ 23, Ex. T.)  In the meantime, on September 4, 2013, defendants' counsel again e-mailed plaintiff's counsel, confirming the dates of the putative class member depositions set for the last two weeks of September.  Defendants' counsel added:

You requested copies of the personnel files of each of the deponents prior to the deposition.  Pursuant to our protective order, we have given notice and a copy of the protective order to the deponents.  As you requested, we also included your contact information on the notice.  We will produce all the personnel files to which there are no objections prior to the depositions.  If this communication does not accurately reflect the confirmation of our arrangements for the depositions, please notify me immediately in writing.  Thank you for your cooperation and courtesy.

(Id. ¶ 24, Ex. U.)  Plaintiff's counsel did not respond to that e-mail.  (Id.)  On September 11, 2013, defendants' counsel followed up with another e-mail:

We still have not heard from you in response to this last email regarding the depositions set to being [sic] on September 17, 2013.  As we have previously noted, we are willing to produce the

6

1    personnel files once you confirm that you will appear on the dates
2    noticed below.  Please provide the courtesy of a response by 5:00
     p.m. today, September 11, 2013.

3    (Id. ¶ 25, Ex. V.)  Plaintiff's counsel again did not respond.  (Id.)

4         Then, on September 12, 2013, defendants' counsel received plaintiff's objections to the

5    deposition of Michael Amato.  The proof of service indicated that the objections were sent by

6    U.S. Mail on September 9, 2013.  The objections stated, *inter alia*, that plaintiff objected to the

7    notice of deposition and subpoena of Mr. Amato "on the following grounds: 1) Defendant failed

8    to set the deposition on a mutually agreed upon date; and 2) Mr. Amato and/or Plaintiff's counsel

9    is/are unavailable on the scheduled date.  Accordingly, Mr. Amato will not be appearing on

10   September 17, 2013 for the noticed deposition.  However, Plaintiff's counsel will cooperate with

11   regard to the scheduling of Mr. Amato's deposition."  (Yap Decl. ¶ 26, Ex. W.)  That same day

12   defendants' counsel also received identical objections by plaintiff as to the depositions of Danny

13   Alvarez and Joseph Oliveira.  The proof of service indicated that these objections were sent by

14   U.S. Mail on September 10, 2013.  (Id. ¶ 27, Ex. X.)

15        That same day, defendants' counsel sent multiple e-mails to plaintiff's counsel, requesting

16   alternate available dates for the depositions of Messrs. Amato, Alvarez, and Oliveira; seeking

17   clarification as to whether plaintiff's counsel intended to appear at the remaining scheduled

18   depositions as subpoenaed; and attaching the personnel files of Messrs. Amato, Alvarez, and

19   Oliveira.  (Yap Decl. ¶ 28, Ex. Y.)  Because at least some of those e-mails with attachments

20   appeared to have bounced back, defendants' counsel re-sent the primary e-mail the next day

21   (September 13, 2013), noting that hard copies of the previously-sent personnel files were being

22   forwarded by mail.  (Id. ¶ 29, Ex. Z.)  With no response from plaintiff's counsel, defendants'

23   counsel followed up with yet another e-mail on September 17, 2013, requesting plaintiff's

24   counsel to confirm whether they intended to appear at the remaining scheduled depositions and to

25   provide alternate dates for the already-cancelled depositions.  (Id. ¶ 30, Ex. AA.)  On September

26   18, 2013, defendants' counsel sent the personnel files for the remaining seven deponents to

27   plaintiff's counsel.  (Id. ¶ 31.)

28   ////

7

Then, on September 19 and 20, 2013, without further communications from plaintiff's counsel, defendants' counsel received plaintiff's objections to the remaining scheduled depositions, likewise stating that defendants failed to set the depositions on a mutually agreed-upon date and that *the deponents* would not be appearing for their depositions.  (Id. ¶¶ 32-33, Exs. BB, CC) (emphasis added.)[5]

On September 23, 2013, defendants' counsel e-mailed plaintiff's counsel to request a discovery conference regarding the putative class member depositions pursuant to Local Rule 251.  (Yap. Decl. ¶ 34, Ex. DD.)  Plaintiff's counsel apparently did not respond to this e-mail either.  However, at a September 26, 2013 motion hearing pertaining to a different discovery matter, defendants' counsel raised the issue of the putative class member depositions with the court.  At that time, the court ordered the parties to further meet and confer with respect to the depositions, and set a telephonic conference with the court for October 1, 2013.  The court also ordered the filing of a joint letter brief on September 30, 2013, in the event that the parties were unable to resolve their dispute informally.  (ECF Nos. 49, 50.)

Pursuant to the court's order, the parties arranged a telephonic meet-and-confer session for September 27, 2013.  (Yap Decl. ¶¶ 35-37, Exs. EE-GG.)  Defendants' counsel described the meet-and-confer session as follows:

> Edwin Aiwazian began the phone call by asking what depositions we were discussing.  Mr. Aiwazian then stated that parties were limited to ten depositions in federal court.  I reminded him that the parties expressly agreed to more depositions at the Rule 26 conference and memorialized this in the Joint Status Report.  Mr. Aiwazian asked for proofs of service of the deposition subpoenas, which I agreed to provide.  Mr. Aiwazian then gave available dates at the end of October and beginning of November.  However, Mr. Aiwazian then stated that he would still object to the depositions going forward, asserting, for the first time, based on the rights of deponents to review their personnel files and prepare for the deposition.  [sic]

(Id. ¶ 38.)

////

---

[5] As noted above, plaintiff's counsel did not represent these deponents and had not even spoken to them.

1    After the meet-and-confer session on September 27, 2013, defendants' counsel sent

2    plaintiff's counsel an e-mail, confirming the available dates for the depositions and plaintiff's

3    desire to proceed with the court telephonic conference in light of plaintiff's objection to the

4    depositions going forward.  Defendants' counsel requested plaintiff to prepare its portion of the

5    joint letter brief, and indicated that defendants would submit their portion to plaintiff in advance

6    of the 12:00 p.m. filing deadline on the following Monday September 30, 2013.  (Yap Decl. ¶ 39,

7    Ex. HH.)  That same day, plaintiff's counsel responded: "Please send us the stmt ASAP … You

8    should not wait until the last minute to send it to us."  (Id. ¶ 40, Ex. II.)  Defendants' counsel

9    forwarded defendants' portion of the joint letter brief to plaintiff's counsel on Sunday September

10   29, 2013, and sent a revised version at 9:46 a.m. the next morning, which contained typographical

11   corrections and no substantive changes.  Defendants' counsel requested that plaintiff's counsel

12   forward plaintiff's portion of the joint letter brief by 11:45 a.m. that morning to ensure

13   compliance with the court's 12 p.m. deadline.  (Id. ¶¶ 41-42, Exs. JJ, KK.)[6]  When defendants'

14   counsel received no response to that request as of 11:42 a.m. that morning, defendants' counsel

15   again contacted plaintiff's counsel via phone and e-mail.  (Id. ¶¶ 44-46, Ex. MM.)  Plaintiff's

16   counsel ultimately forwarded plaintiff's portion of the joint letter brief to defendants' counsel at

17   11:56 a.m. that day.  (Id. ¶ 47, Ex. NN.)

18   As noted above, the court ultimately ordered the depositions of putative class members to

19   go forward on the specified dates agreed upon by the parties at their September 27, 2013 meet-

20   and-confer session.  (ECF No. 53.)  With these background facts in mind, the court now turns to

21   the issue of sanctions.

22   DISCUSSION

23   Defendants' Request for Sanctions

24   Defendants request that sanctions be imposed against plaintiff and plaintiff's counsel

25   under both Rule 30 and Rule 37 of the Federal Rules of Civil Procedure.  Rule 30 provides, in

26   part, that "[t]he court may impose an appropriate sanction – including the reasonable expenses

---

[6] Defendants' counsel also forwarded proofs of service for the deposition subpoenas as requested
by plaintiff's counsel.  (Yap Decl. ¶ 43, Ex. LL.)

1    and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair

2    examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  Rule 37 provides, in part, that:

3              If the motion [to compel discovery] is granted—or if the disclosure
               or requested discovery is provided after the motion was filed—the
4              court must, after giving an opportunity to be heard, require the party
               or deponent whose conduct necessitated the motion, the party or
5              attorney advising that conduct, or both to pay the movant's
               reasonable expenses incurred in making the motion, including
6              attorney's fee.  But the court must not order this payment if: (i) the
               movant filed the motion before attempting in good faith to obtain
7              the disclosure or discovery without court action; (ii) the opposing
               party's nondisclosure, response, or objection was substantially
8              justified; or (iii) other circumstances make an award of expenses
               unjust.
9

10   Fed. R. Civ. P. 37(a)(5)(A).

11          The parties' correspondence outlined above makes clear that plaintiff's counsel on

12   numerous occasions entirely failed to respond to defendants' counsel's correspondence related to

13   scheduling the putative class member depositions.  At other times, plaintiff's counsel responded

14   rather promptly, but provided little substantive information in response to defendants' counsel's

15   scheduling requests.  When defendants' counsel ultimately scheduled the depositions in the

16   general time frame for which plaintiff's counsel had indicated their availability, and subsequently

17   sought to confirm those depositions with plaintiff's counsel, plaintiff's counsel discourteously

18   ignored defendants' communications and merely served objections by mail at the eleventh hour.

19   Even after the depositions were cancelled, plaintiff's counsel failed to respond to inquiries

20   regarding alternate deposition dates until the court ordered plaintiff's counsel to meet and confer.

21   Whether plaintiff's counsel's conduct was the result of gamesmanship, lack of coordination

22   between plaintiff's various attorneys, or mere carelessness or neglect, such conduct is entirely

23   unacceptable and sanctionable.

24          Plaintiff's substantive objections to the depositions were also devoid of merit and

25   sanctionable.  In light of defendants' counsel's extensive meet-and-confer efforts and plaintiff's

26   counsel's non-responsiveness, plaintiff's counsel could not credibly claim that the depositions

27   were not set for mutually agreed-upon dates.  Furthermore, given that plaintiff is represented by at

28

1   least 5-6 attorneys, it seems implausible that *all* of those attorneys were suddenly unavailable for

2   *all* of the scheduled depositions.

3        Even more troubling was plaintiff's counsel's assertions in some of the objections that the

4   deponents themselves were not available for their scheduled depositions.  To the contrary,

5   because the putative class member deponents were employees of defendants, defendants had

6   specifically arranged for the deponents to have specific days off work, at full pay, to attend their

7   depositions.  (ECF Nos. 51 at 1, 54-1 at 7.)  Even though plaintiff's counsel may not have been

8   aware of these arrangements, they certainly had no basis to raise any objections as to the

9   availability of the deponents, whom they do not represent.

10        In that regard, plaintiff's counsel argues that their intention was merely "to communicate

11   to Defendants that Plaintiff's counsel did not represent the deponents and did not know whether

12   they were available or not."  (ECF No. 55 at 5; Declaration of Edwin Aiwazian, ECF No. 55-1

13   ["Aiwazian Decl."] ¶ 2.)  He explains that "Defendants' counsel only served Plaintiff with proofs

14   of service that indicated service of subpoenas to Plaintiff's counsel; the proofs of service did not

15   indicate whether the subpoenas were served upon the deponents.  Therefore, I believed it was

16   important to clarify that I did not represent the deponents and did not know whether they were

17   available or not."  (Aiwazian Decl. ¶ 3.)  According to plaintiff's counsel, they also "represent

18   various other putative class members who have asserted individual actions against Defendants.

19   Therefore, I wanted to raise the point that it [sic] did not have control over or ability to produce

20   these particular deponents for a deposition."  (Id. ¶ 4.)  Even assuming that plaintiff's counsel

21   genuinely believed that defendants' counsel may not have served the subpoenas on the deponents

22   directly, and wanted to clarify that plaintiff's counsel did not represent the deponents and could

23   not attest to their availability, that was certainly not what the objections stated, and it is unclear

24   how defendants were supposed to divine that message from plaintiff's objections.  Indeed,

25   plaintiff's counsel not only indicated that some of the deponents may not be available, but

26   affirmatively represented, with respect to each deponent, that the deponent *will not be appearing*.

27   The court cannot fathom how plaintiff's counsel could make such a representation when, as

28   plaintiff's counsel concedes, they do not even presently represent these deponents.

1    Plaintiff also argues that defendants' counsel had delayed providing plaintiff's counsel

2    with the personnel files of the deponents.  The court agrees, at least in part, that defendants'

3    counsel could have communicated and clarified at an earlier stage that they were willing to

4    provide the personnel files subject to the protective order.  As such, the court will make some

5    reduction to the amount of sanctions awarded.  Nevertheless, the court observes that defendants'

6    counsel provided the personnel files for all of the deponents to plaintiff's counsel several days

7    before each deponent's initially scheduled deposition date.  Moreover, any shortcomings by

8    defendants do not excuse plaintiff's counsel's own misconduct with respect to these depositions.

9    Indeed, plaintiff's counsel has provided no authority for the proposition that they were entitled to

10   receive the personnel files of the deponents prior to their depositions or that such receipt was a

11   prerequisite for scheduling the depositions, especially given that plaintiff's counsel does not

12   represent the deponents.

13   In a similar vein, plaintiff's counsel had no substantial justification for opposing the

14   depositions going forward based on the deponents' purported rights to review their personnel files

15   and prepare for depositions.  None of the deponents asserted any objections to their depositions,

16   and plaintiff's counsel does not represent the deponents.

17   In light of the above, the court concludes that defendants are entitled to an award of

18   monetary discovery sanctions.  Such sanctions are appropriate pursuant to Rule 30(d)(2) for

19   plaintiff's counsel's conduct in delaying, impeding, and/or frustrating the depositions of the

20   putative class members.  Alternatively, sanctions are appropriate pursuant to Rule 37(a)(5)(A),

21   because plaintiff opposed the depositions going forward, requested the court to resolve the matter,

22   and the court ultimately ordered the depositions of the putative class members to take place.

23   Additionally, for the reasons discussed above, plaintiff's counsel failed to show that their

24   objections were substantially justified or that other circumstances make the award of sanctions

25   unjust.  Because the sanctions involve conduct by plaintiff's counsel, as opposed to any specific

26   conduct by plaintiff himself, the sanctions are appropriately levied against plaintiff's counsel.

27   Defendants' counsel, Ms. Yap, represents that she "spent over ten hours drafting

28   correspondence to Plaintiff's counsel regarding the scheduling of depositions, corresponding with

12

1    my clients regarding their availability for depositions on the noticed dates, preparing the notices

2    of depositions and deposition subpoenas, organizing proper service of the deposition subpoenas

3    on the deponents, reviewing the piecemeal objections to the noticed subpoenas, and preparing the

4    joint statement regarding these depositions.  I have spent over five hours reviewing all of the

5    communications relating to these depositions and preparing this request for sanctions." (Yap

6    Decl. ¶¶ 48-49.)  Defendants represent that although "at least three attorneys for Defendants have

7    been involved in these efforts, including partners who bill at substantially higher rates,

8    Defendants only request the time spent by Ms. Yap, an associate, relating to this matter." (ECF

9    No. 54-1 at 9 n.4.)  Ms. Yap's standard hourly billing rate is $365.  (Yap Decl. ¶ 50.)

10          For purposes of this motion,the court finds Ms. Yap's billing rate and the number of hours

11   spent, a total of 15 hours, to be reasonable, especially in light of the extensive meet-and-confer

12   efforts made by defendants' counsel.  Indeed, although plaintiff opposed the imposition of

13   sanctions generally, plaintiff did not contest defendants' counsel's billing rate or the number of

14   hours spent.[7]

15          Nevertheless, the court finds that a reduction in the amount of sanctions is warranted,

16   because defendants' counsel could have communicated and clarified at an earlier stage that they

17   were willing to provide the personnel files subject to the protective order.  Therefore, in its

18   discretion, the court will not award defendants any fees related to the five hours defendants'

19   counsel spent preparing the fee request.  This reduction is quite generous given that defendants'

20   counsel's shortcomings pale in comparison with plaintiff's counsel's egregious conduct with

21   respect to these depositions.

22          In sum, the court awards defendants monetary sanctions for 10 hours spent at a rate of

23   $365 per hour, for a total of $3,650.00.  These sanctions shall be paid by plaintiff's counsel (i.e.,

24   plaintiff's various attorneys and/or law firms are jointly and severally liable for the sanctions),

25   ////

26

27   [7] While the undersigned might otherwise question whether Ms. Yapp's awarded hourly rate should be slightly lower, in light of plaintiff's counsel not contesting the hourly rate and the court making other adjustments to the requested sanctions herein, the court does not make any further

28   hourly rate adjustment.

13

1 | and plaintiff's counsel shall not attempt to directly or indirectly recover such sanctions from

2 | plaintiff.

3 | Order To Show Cause

4 | The court declines to impose any additional sanctions sua sponte. The court finds that the

5 | award of sanctions to defendants adequately compensates them for their time and money

6 | unnecessarily spent with respect to this discovery dispute, and also serves as sufficient deterrence

7 | for future discovery misconduct. The court acknowledges plaintiff's counsel's apology in its

8 | response to the order to show cause, and instead of imposing additional sanctions, the court

9 | encourages the parties to start anew on a course of responsiveness, cooperation, civility, and

10 | diligence with respect to discovery.

11 | CONCLUSION

12 | Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

13 | 1. Defendants' request for sanctions (ECF No. 54) is GRANTED IN PART.

14 | 2. Within fourteen (14) days of this order, plaintiff's counsel shall pay a total of

15 | $3,650.00 in attorneys' fees to defendants' counsel as monetary discovery sanctions.

16 | Plaintiff's counsel shall not attempt to directly or indirectly recover such sanctions

17 | from plaintiff.

18 | 3. The October 2, 2013 order to show cause (ECF No. 53) is DISCHARGED.

19 | IT IS SO ORDERED.

20 | Dated: October 17, 2013

21

22 | KENDALL J. NEWMAN
   | UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

14