UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BICEK; individually, and on behalf of other members of the general public similarly situated, and on behalf of aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>C&S WHOLESALE GROCERS, INC., a Vermont corporation; TRACY LOGISTICS, LLC, an unknown business entity and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:13-cv-00411-MCE-KJN<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiffs Danny Payne ("Payne") and Rothell Williams ("Williams") (collectively "Plaintiffs") initiated this lawsuit against their employers, Defendants C&S Wholesale Grocers, Inc., and Tracy Logistics, LLC, (collectively "Defendants") alleging violations of California law arising out of Defendants' failure to pay overtime wages and to provide meal and rest breaks.[1]  Currently before the Court is Defendants' Motion for Partial Summary Judgment (ECF No. 90).  Based on their view of the undisputed facts,

---

[1] Numerous plaintiffs originally pursued similar claims against Defendants.  Payne and Williams are the only two that remain.

Defendants assert through that Motion that Plaintiffs were exempt from the relevant state labor laws. For the reasons set forth below, Defendants' Motion is DENIED.[2]

## BACKGROUND

Defendants hired Payne and Williams in 2011 as "Warehouse Supervisors" and classified them as "exempt employees under the executive exemption provisions of California wage and hour laws."[3] Pl.'s Opp'n to Mot. for Partial Summ. J., ECF No. 91, at 1-2. The expected job duties associated with the Warehouse Supervisor position are set forth in an online job description that provides the following job summary:

> Effectively manage and oversee the day to day activities of one or more warehouse operational function(s) and supervise and direct the work of multiple employees. Utilize discretion and independent judgment to manage efficiency and profitability, while fostering a fair and congenial employment environment that encourages positive employee relations and supports retention. Monitor, manage, and direct work practices to ensure that they adhere to all applicable Federal, State, Local and Industry regulatory standards and C&S Policies and Practices. Warehouse functions may include: selecting, loading, shipping, receiving, safety, sanitation, replenishment and product storage processes.

See Decl. of Christopher Clark, ECF No. 90-3, ¶ 11, Exh. C.[4] That job description also notes that the position's FLSA status is "Exempt (Salary)." Id. A separate written job description indicates that Supervisors have shared responsibilities over hiring and firing, changing subordinate salary, and changing operating practices, and would have primary

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local R. 230(g).

[3] Plaintiffs still hold the same position with Defendants today. Decl. of Christopher Clark, ECF No. 90-3, ¶¶ 7-8.

[4] Declarant Christopher Clark avers that this job description "applied at the Stockton facility to all Plaintiffs." Clark Decl., ¶ 11. Mr. Clark does not state whether this same description, which appears to be from 2013, applied at all applicable times as well. For purposes of the instant Motion, the Court will assume that it did.

responsibilities over changing subordinate job assignments.[5]  See id., ¶ 10, Exh. B.

Plaintiffs do not dispute that they hold the titles of Warehouse Supervisor, but they do dispute whether and to what extent they actually perform the job functions formally associated with that title.  Based on the evidence in the record, conflicting conclusions could be reached.  Significantly, some of Plaintiffs' own testimony is potentially consistent with the above job descriptions.  For example, Williams testified that he was the only warehouse supervisor responsible for the "freezer dock" or the "produce dock."  Williams Depo., ECF No. 90-4, at 294:25-295:7.[6]  When asked if he had a specific area of responsibility, Williams responded, "you have some areas you are assigned to that you're responsible for the – the entire shift."  Id. at 291:13-24.  Williams "used his judgment and discretion" to deal with "something I see with safety."  Id. at 366:20-367:3.  Payne similarly testified that he had served as supervisor for the Shipping Department, the Receiving Department, and for Transportation.  Payne Decl., ECF No. 91-7, ¶ 2. According to Payne, he tried to "take care of everybody to the best of [his] ability depending on where [he was] at."  Id. at 38:3-6.  He had to "prioritize" what to do each day "because every day is different."  Payne Depo. I, ECF No. 90-4, 64:17-19; Payne Depo. II, ECF No. 90-4, 75:1-12. In these locations, Plaintiffs testified to overseeing 60-90 employees (Williams) and 100 employees (Payne).  Williams Depo., 72:11-21; Payne Depo. I, 141:14-18, 185:15-186:6.

Plaintiffs also testified about their role in the hiring and firing processes at the facility.  According to Williams, he "collaborate[d] with other supervisors and managers in the employment process, including making decisions, suggestions and/or recommendations as to the hiring . . . of Associates."  Williams Depo., Exh 13.  There is also evidence that Payne made recommendations about whether each candidate would

---

[5] As above, the Court will assume this same written job description applied throughout all times relevant to this Motion.

[6] Because the Court resolves this Motion in Plaintiffs' favor, Plaintiffs' Objections and Requests to Strike Portions of the declaration introducing the cited deposition testimony (ECF No. 91-11) is DENIED as moot.

proceed to the next step.  Payne Depo., Exhs. 3-5.  Both Plaintiffs also testified that, although rare, they participated in the process of terminating other employees.  Williams Depo., 382:11-24; Payne Depo. II, 82:23-83:5.

As to how much time Plaintiffs have spent on the above types of duties, Williams said he was "constantly managing workflow," and that he spent "most of the time . . . doing audits."  Williams Decl. ¶ 10[7]; Williams Depo., 344:19-345:2.  He also reported spending "90% of [his] work time . . . monitoring and directing employees, assigning work to employees, and delegating responsibilities to employees"; "directing hourly employees to set up [the] dock"; "monitoring progress of work performed by hourly employees"; "responding to hourly employee inquiries and solving problems"; and "ensuring that hourly employees take meal and rest breaks."  Williams Decl., ¶ 20.  Payne similarly testified that his "audits" took "most of [his] day."  Payne Depo. I, 235:8-20.  He also stated that he is "checking on guys working on the docks . . . throughout [his] shift."  Id. at 79:17-19.

In addition, according to Defendants, because Plaintiffs supervise hourly union member employees, they are generally not permitted to perform bargaining unit work, or work that would consist of non-exempt functions, in the first place.  The Collective Bargaining Agreement in this case states that non-union personnel (e.g., Warehouse Supervisors) "will not perform bargaining unit work except in cases of emergency, training of employees, or after the Employer has made a good faith effort to contact all associates on the seniority list and offer such work to those associates."  See, Clark Decl., ¶ 3, Ex. A.  Based on the plain language of this agreement, then, Defendants contend that "Plaintiffs are prohibited from performing non-supervisory duties" and that "their duties are necessarily managerial."  Defs.' Mot., ECF No. 90-1, at 2.

Other evidence in the record may be construed to the contrary, however.  For

---

[7] Williams contends that the declaration Defendants cite to was signed involuntarily without time to read the document or consult an attorney.  See Pl.'s Opp'n, ECF No. 91, at 2, 19-20.  Those circumstances go to the weight to be given to the declaration, however, and not its admissibility.  The Court will let a jury decide how much weight to give the initial Williams Declaration.

example, Plaintiffs contend that they spend approximately 70% to 80% of their time performing non-managerial tasks such as clerical work and cleaning. Williams Depo., ECF No. 91-5, 189:17-190:8, 191:18-193:11; Payne Depo., ECF No. 91-3, 66:14-25, 413:11-414:3. Much of this work is also performed by unionized hourly employees. Id. While working alongside hourly employees, Plaintiffs declare that they did not act as supervisors and were overseen themselves by Shift Managers and Operations Managers who were the individuals actually making decisions. Williams Depo., 165:4-24; Payne Decl., ¶¶ 13-15.[8]

In addition, Plaintiffs contend that they were rarely involved in the hiring and firing process while employed with Defendants. When they did participate in an interview, they were given specific questions to ask and were not permitted to go beyond those inquiries. Payne Decl., ¶ 14; Williams Depo., 268:4-14; Payne Depo., 408:20-410:4. According to Williams, in his four years with Defendants he participated in only five interviews, all of which took place in November 2013, after this lawsuit had been initiated. Williams Depo., 110:24-111:16, 112:23-113:2, 270:21-24. Payne testified similarly that he was not responsible for disciplining hourly employees, which was done by a Shift Manager. Payne Decl., ¶ 14, Payne Depo., 85:10-86:18. Williams testified that, throughout his tenure with Defendants, he has only made one recommendation about terminating an employee. Williams Depo. II, 384:19-385:18, 387:2-6.

Plaintiffs also dispute the extent to which they exercised independent discretion and judgment. Williams and Payne both testified that because the assignment system is exclusively driven by seniority lists, they are not able to use their own discretion to assign tasks to employees. Williams Depo., 163:5-164:17, 180:9-23; Payne Decl. ¶ 11. Most of their other duties also do not require independent judgment or discretion and are

---

[8] Defendants argue that Plaintiff Payne should not be permitted to rely on his own subsequent declaration contradicting his deposition testimony in order to create triable issues of fact. The implication appears to be that this declaration should be disregarded as a sham. See Def.'s Reply, ECF No. 94, at 4, n.14. On the record before it, the Court concludes that any purported contradictions go to the weight of the Plaintiff's testimony, not whether it should be considered in the first instance. The Court will leave it to the jury to weigh that evidence.

performed by hourly workers as well.  Payne Decl., ¶¶ 5, 7, 9, 11-15; Williams Depo., 164:5-164:17, 180:9-23, 207:19-23, 214:25-215:3.

In the end, Defendants nonetheless classified Plaintiffs as managerial employees and thus did not provide them with overtime pay, minimum wage, or meal and rest breaks.  As a result, Plaintiffs initiated this action alleging violations of California's Labor Code and Business and Professions Code.  Defendants moved for summary judgment arguing they are entitled to judgment as a matter of law because Plaintiffs are both exempt employees not entitled to the benefit of those laws.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 323-24.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of

material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355-56 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Id. at 251 (internal citations and quotations omitted).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. 587 (internal citations and quotations omitted).

In resolving a summary judgment motion, the evidence of the opposing party is to

be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

According to Plaintiffs, Defendants violated various sections of the California Labor Code and California Business and Professions Code section 17200 when, among other things, they failed to pay overtime and minimum wages and failed to provide meal and rest breaks. Defendants contend, however, that they are entitled to partial summary judgment because Plaintiffs are "executive or supervisory employees" who are exempt from the protections of those laws as set forth in California Wage Order No. 7-2001. As is evident from the above background recitation, many material facts are disputed, and as such, summary judgment is improper.

California labor laws require employers to provide overtime pay, minimum wages, and meal and rest breaks for all non-exempt employees. See California Labor Code §§ 226.7, 510, 512, 1194, 1197, 1198. California Wage Order No. 7-2001 then sets forth a standard for determining whether an employee is "exempt" from those provisions. An exempt executive or supervisory employee is one: "(a) [w]hose duties involve the management . . . of a customarily recognized department or subdivision thereof"; "(b) [w]ho customarily and regularly directs the work of two or more other employees"; "(c) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight"; "(d) [w]ho customarily and regularly exercises discretion and independent judgment"; and "(e) who

is primarily engaged in duties that meet the test of the exemption." 8 Cal. Code Regs., § 11070. Additionally, to qualify for non-exempt status, an employee must also earn a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. Id.

It is undisputed that Plaintiffs were Warehouse Supervisors assigned to "customarily recognized departments or subdivisions" of Defendants' Stockton facility and that they earned a "monthly salary equivalent to no less than two (2) times the state minimum wage." Id. However, the parties disagree and cite conflicting evidence as to everything else. For example, Defendants point to evidence indicating Plaintiffs regularly directed the work of a number of employees, but Plaintiffs cite additional evidence from which it could be inferred that the majority of their time was actually spent working alongside the hourly employees. Similarly, Defendants assert that Plaintiffs had a significant role in the hiring and firing process, but Plaintiffs offer evidence that those opportunities arose infrequently and that, when they did, Plaintiffs were not given any interviewing discretion. Defendants also claim Plaintiffs were required to exercise judgment constantly to prioritize and manage the workings of a particular warehouse, but Plaintiffs claim the actions that Defendants say require independent judgment are strictly controlled by defined seniority lists and company policies. Ultimately, the most significant factual dispute arises as to the question of whether Plaintiffs "primarily engaged in duties that meet the test of exemption." Id. Defendants claim that Plaintiffs spent well in excess of 50% of their time performing executive functions, but Plaintiffs claim it is closer to 30%. What amount of each day was spent on managerial duties, as opposed to hourly-worker tasks, is a textbook example of a question best left to a trier of fact. Given the conflicting evidence before the Court, summary judgment would be improper.

///

///

///

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment (ECF No. 90) is DENIED.  An Amended Pretrial Scheduling Order setting the matter for trial will issue from the court.

IT IS SO ORDERED.

Dated:  July 29, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT